Simpson. Excuse me, Mr Tyser. Good morning. May please the court. The district court aired in two major ways. The first way is they they ignored the express language, the clear and unambiguous language of the divorce decree. The divorce decree was an agreed contract and is also an agreed judgment adopted by the court that's res judicata. There's no mistake that all life insurance policies, all life insurance policies, ensuring the life of Ian. Now the decedent belonged to him and therefore Miss Moore was displaced and divested of all interest in and to that policy, whether it was in any way, shape or form. Somehow the court got led stray and began reevaluating or I guess relooking at the divorce decree and saying it really didn't take care of that policy. And if it did, then there's some kind of unconstitutional taking. It can't be an unconstitutional taking when it's an agreed divorce and it's an agreed contract. You could wave even if there was a constitutional question and there is not, you could wave that and that's exactly what occurred in this case. What's the policy? I'm sorry. Typically, if you want to change the beneficiary on an insurance policy, all you have to do is contact the insurance company and change the beneficiary. Isn't that how it typically works? You can do that. Texas provides your honor that there's other ways and you can displace them in a divorce decree and you can also rely on 9301 of the Texas Family Code. Either way. What's the case in Texas that says clearly that you can take an insurance policy with a named beneficiary and by way of a divorce decree, you can change the beneficiary on that policy? Well, they're cited throughout our brief, but I would say to the court, there's Henrick v. Dedeck, there's Partain, Devaney. There's a number of you've removed them as a beneficiary as a matter of law and in conjunction with that, your honor, and that's, and that's without regard for whether it's community property or property that someone had before the marriage. Well, it doesn't matter in this case what, what was community or not because they agreed what the marital mistake was. Well, that's what I was going to ask is this, is this even community property? Because he got the policy before they got married, correct? It doesn't matter, your honor, what it is because they agreed it was the marital estate that included all life insurance policies. You can do that in the Texas Supreme Court. Your position is it effectively became community property. The Texas court treated it as community property. So by the time of the decree, it was community property. Well, no, your honor, a little bit more specific than that. What occurred was they agreed that this was the marital estate. The marital estate in Texas typically is referred to as community property, but it also allows it to be separate property or both. In this case, they divided the marital estate. The marital estate included all life insurance policies, assuring, ensuring Ms. Moore or the decedent Ian. Well, the decree says all the, all the policies that were ensuring Ian's life are Ian's property. It says more than that. And it displaces and divests Ms. Moore of all interest in and to that policy, every single policy. Ian remains the owner of the policy, which he, which he was after the divorce. Um, I guess he was before the marriage also, but, but so after the divorce, he owns the policy, but back to Judge Graves question, why then could he not just have changed the beneficiary? He could have done that, but here's how it works. It's very simple. By virtue of the divorce decree, there's language in the policy. It says, if your interest has been removed, then we pay the contingent beneficiary, it was removed by operation of law, the divorce decree. But there are Texas cases that go the other way. Are there not that say, well, regardless of who the owner of the policy was, the beneficiary wasn't changed ex-wife takes actually your honor, whatever cases, those were way back from the sixties, seventies and eighties. Are they now bad law? I think they are bad law. And the fact that the, uh, Apple is your case that overrules those cases. Well, it talks about, uh, there's a big that talks about that. There's the case of Navani. They're one of, I can't remember which exact one, but on rebuttal, I'll find that one, but there's one that says you, those are the language of the past. Here's the other issue about that. Though those cases also are not as specific in the language in the decree. They talk about ownership necessarily. And it's in the language using the divorce decree here is beyond ownership of the policy. It talks any claim in, into the policy that takes care of it. The cases that they cite don't use that broad and all inclusive language. And there is a presumption in the state of Texas that divorcing couples don't intend to leave financial benefits to their divorcing spouse absent express carve out in 9301 or some other contractual arrangement. But here in this case, get back to your question. You could have done that, but you didn't have to do that. And the reason you didn't have to do that is because the divorce decree displaced her interest as a matter of law in the policy, in the policy language, transamerica policy says, if your interest has been removed, then it goes to the contingent beneficiary. And if not to the contingent, if there's no contingent beneficiary then to the estate easily. That's the first argument. Second argument that we talk about is 9301. Well, so I was about to ask about 9301, does the Texas law, the cases, do they make 9301 redundant? No, your honor, because they say, they say that 9301 is a fail safe is if the decree does not address it, then this is the fail safe method. That's a default. It's a default. Yes, your honor. Here, the district court didn't even need to go to 9301 because you're traveling under the decree language. Absolutely. Your honor, that is exactly our position. But if they say that somehow that the decree didn't deal with it, we say, well, 9301 does now. They rely, the district court relied on a case called Thrive-In versus Simpson. Not this Simpson, but another Simpson, Thrive-In, where Judge Nolan makes a dictatorial statement, dicta, about it doesn't apply to policies that were purchased outside of the marriage. In other words, if the 9301 doesn't apply unless the policy was purchased during the marriage. I don't know why he wrote that because the case he was writing about had nothing to do with that because the case he was deciding, the Simpson case, Simpson versus Prime America, I'm sorry, dealt with a policy that was purchased during the marriage, it would make no sense to carve out and say, well, 9301 only deals with policies purchased during the marriage, simply because the couple subsequently divorces, and that's a different story. It's the same principle. Divorcing spouses do not intend to bestow financial benefits on their ex-spouse. That's the policy of the state of Texas. That's been a common law presumption or a common law principle, and that was codified in 9301, and before that. You reject the argument that 9301 may not apply because when he, when Ian designated Holly as the beneficiary, she was not a spouse. I wholly reject it because it wouldn't make any sense. Why would you have a carve out when the presumption or the principle or the common law presumption is that divorcing spouses don't intend to bestow financial benefits on their ex-to-be ex-spouses? What difference does it make? Simply because somebody became the spouse later. It makes no difference at all. The statute doesn't carve that out. And the argument that, uh, he intended to bestow a benefit upon her before she was even a spouse. He did. And that undermined the whole presumptuous presumption business? I don't believe it undermined anything. Well, you're saying I wouldn't want to give benefits to an ex-wife. He decided to give benefits to a pre-wife. That right. And that does make sense. It does seem like the statute covers that as well. I mean, it's got, it looks like to me, it covers all the contingencies. I think, I believe 9301 covers it all. Uh, and the carve out makes no sense. The term insured spouse. Somebody says, well, that only means if there was a divorce. I mean, if the policy was bought during the marriage, that makes zero sense. It only means that that's the status of the parties. Insured spouse at the time of the divorce. She's the insured or he's the insured spouse. Makes no difference. The title doesn't give it away either because it's not anything about community property. It's about undivided beneficial interest. It doesn't say undivided community interest. It says undivided beneficial interest. And it says pre decree 9301 designation of ex-spouse as beneficiary of life insurance. It clearly covers any situation at the time of the divorce. The policy of insurance and the decree doesn't deal with it. It's a fail safe and default as, as, uh, uh, this Wilson said. But in this case, the decree was clear. It was, uh, unambiguous. It was expressed and you can't go back behind the decree. The Texas Supreme court has said over and over, it doesn't make any difference if it's an insurance policy or a divorce decree, which by the way, can be contractual if it's agreed to or anything else, if you didn't like the deal, then you shouldn't have agreed to the deal. And that's exactly what occurred in this case that Ms. Moore and Ian agreed to this decree, the division, not to mention, your honors, not to mention that the decree released any interest each had in the property of the other. And the decree carves out to the extent that there's an argument that it can include the policy because it was purchased before marriage, all Paul, all property at the time of divorce is presumed community property and is the burden of the person who claims separate property to trace. But in this case, it was real easy. They didn't care because apparently there wasn't a whole lot to fight about. So they dump it all in the marital estate and they can do that. And they did that by, was there any evidence about paying premiums while they were married? No, your honor. There's no, no evidence in the record, but there was, we believe there was. The answer to the question, nothing in the record, but yes, there was payment, but there was nothing in the record. How long were they married? Uh, approximately two years, two years. And so also that deals with the issue. And I'm glad that you brought that up. If you don't deal with that in the decree, then that means the other spouse may have a claim for community reimbursement if they're using community funds to fund a policy of insurance or anything else for that matter. So they put it all in decree by agreement and by contract. And that's how they got to exactly what it is. There isn't anything, you can't go behind what the district court did. And what Ms. Morton did was say they went behind and said, well, that's not really what we meant. Well, if that's not really what you meant, then you should have put it in the divorce decree. And it wasn't, and it was. Also addresses the policy. It releases in the decree. It releases any claim the other has to property rights, torts, or otherwise. It is a complete release in this case. There's no constitutional taking and there's no ownership by Ms. Moore. That is the, here's the two cases that really kind of seemed to deal with it. And that is the Simpson, uh, prime America versus Simpson and, uh, that's Fitzwater's case in public. And they argue that it's unconstitutional to take separate property from a spouse. Well, the Texas Supreme court says, if you do it by agreement, then you don't have any complaint. And the only way you can undo that is two ways, a direct appeal or there's a void judgment. There's no argument here. There's a void judgment and there was no direct appeal taken. This judgment is res judicata. So it says what it says. Furthermore, they rely and the district court relied on Simpson to the exclusion of the Thribent case, which really was on point. And the salient point though of Simpson is that in Simpson, the spouse owned the policy by gift and that's the big difference. And it says in, in the case, the case turns on whether Ms. Simpson owns the policy and she did own the policy. He gifted her the policy. He gave it to her. There was unmistakable evidence. Still, I'm not going to, I would quarrel with the fact of what was agreed to, but the same divorce language that was used in Simpson doesn't appear to be the same language in Simpson versus prime America versus this case. The language that's been used in this case is quite clear. And this court say that it displaces the exes interest in a life insurance policy. You can't be any more clear than that. You can't be any more clear. I'll reserve the rest of my time. Thank you. James, excuse me. James McCorkaville on behalf of Holly Moore. May it please the court. I think the analysis really needs to begin with the family code provision 9301. With the Texas revocation upon divorce statute, if the statute applies, you never get to construction of the divorce decree. There are three time periods that we're looking at for designation of a person as beneficiary of a life insurance policy. One period is before there is a marriage. One period is while there is a marriage. And the third period is after there has been a divorce and there is no longer a marriage. In 9301 and the predecessor, the original statute passed in 1987, the Texas legislature created this revocation upon divorce provision, which changed the law as it existed at that time. Because up to that time, the courts have been clear that a divorce spouse was eligible to be the beneficiary of the life insurance policy on the ex-spouse. The termination of the ownership interest of the ex-spouse in the insurance policy did not necessarily destroy the right to receive the policy proceeds as a designated beneficiary, but that it could be terminated if there was sufficiently clear language in the divorce decree with regard to the right of the ex-spouse to take as a beneficiary. In 1987, when the legislature passes the revocation upon the divorce statute and adds it to the family code, it addresses two of the three time frames. It addresses the time frame when the spouses are married and it addresses, and it says there's a presumption and frankly, an irrebuttable presumption, regardless of intent or evidence of intent, that the beneficiary designation is revoked. And it addresses the post-marriage time period as one of the three exceptions. And it says, we will make the designation valid if you repeat it, if you do it again after you've been married. But the statute does nothing to speak of a designation that has been done before there is a marriage, which is entirely consistent with Texas leaving people alone to basically fend for themselves in many ways with what their relations are with each other and their property before they ever get married. Well, but she was the fiancé when he designated her as the beneficiary and they go on to get married. I mean, we can't just ignore that, can we? The statute itself does not refer to designation of a fiancé. Well, it refers to a designation as a spouse. A designation of a spouse. And it says, has designated spouse. It's written in the present perfect tense indicating that something has occurred in the past, which is designation, has designated. And that's a transitive verb that requires an object. And the legislature has said the object is a spouse. But if we disagree with the premise of your argument, you said go to the statute first. Right. If we get to the divorce decree, doesn't your client lose? No, because there is no language in the divorce decree that clearly divests her of the right to take as a beneficiary. It says she was divested of all right, title, interest and claim in and to that property. And then it lists all policies of life insurance, et cetera. I mean, I get the distinction between being the owner of the policy and the name beneficiary. Yes. But you've got Texas cases. Counsel Opposite and I talked about that, that say the presumption is divorcing spouses don't leave each other financial benefits. And when you agree to divest, you're divested. That presumption, though, when you look at the actual case law that precedes the adoption of the Texas statute, doesn't go down that path at all of saying that we're going to apply the presumption that there is nothing. The statute was passed after that. And it says if the insured redesignates the former spouse as a beneficiary, then we know what the intent is. It doesn't matter. But that's correct. But that's not what happens in this case. That's right. He didn't redesignate her. Right. You have to deal with the situation where you had the original designation. To me, the statute clearly addresses that. But then you have to say that the statute's language that says the designation of the insured spouse, you have to give her the status of being a spouse under the statute before they have ever married. Didn't the parties agree that this was part of the marital estate community property during the divorce? There's never been any, like, let me back up for a moment. Whether it was part of the marital estate is not at all set forth in the divorce decree. It doesn't take this particular. There's certainly no one, there's no proof that anybody said this is separate property. It's not, I brought it to the marriage. It's not part of the marriage. Nobody did that. There's nothing in the decree that says it is part of the marital estate. There's nothing in the portion of the decree that says, that sets out certain items as being specifically classified as his separate property. But don't we defer? I mean, we're not reviewing the divorce decree. The Texas court entered it. We've got to interpret it. Correct. But the court there treated it as community property and divided it as part of the marital estate. We don't go behind that and question it. In other words, how are we to then treat it as separate property? Even if it is divided as part of, first, I think the premise is incorrect. There's not a specific reference that this policy is included in the marital estate. And the record pretty clearly shows that it is separate property based on what's currently in the record. But even if a decree treated as part of marital property, the language in the decree is only language assigning who has ownership of the property and says nothing about the right of a person to take as a beneficiary of the ex-spouse. Let's go to 9.301A. It talks in terms of a life insurance policy enforced at the time of rendition, meaning rendition of the divorce decree. And at the time of the rendition of the divorce decree, she was the insured spouse. And she was a beneficiary as the insured spouse at the time of rendition of the divorce decree. It does not, the statute doesn't read precisely that way. The statute reads that the- Well, it's somewhat ambiguous, but I would say a reasonable person reading this would say, if you're the insured spouse at the time of the rendition of the divorce and you're a beneficiary under that policy, then here's what happens. It doesn't matter if you were designated as a fiance, as a beloved mistress. Once you become an insured and you're an insured spouse at the time of rendition, this is what happens. I have no doubt that the statute could have been written by the legislature to- We're talking about what a reasonable person would think. What this- But we take the words of the legislature as they are given to us, although it could have been worded better. It could have been worded like the Michigan statute. It says, even in anticipation of marriage designations, they apply their revocation of fund divorce. Here, the statute says, they talk about has designated the insured spouse. It talks about an act in the past. And so, the insured spouse has to have that statute at the time of designation. You have to have that has designated the insured spouse is an act that occurred in the past, that there was a designation, and that designation, being a transitive group, has to take a direct object. And the legislature has defined that direct object as being the insured spouse. And here, at the time the designation was done under this policy, she was not the insured spouse. And that's why the statute doesn't apply. It could have been better written, perhaps, by the legislature. But this is the way the legislature chose to wrote it. And it is, we don't think it's ambiguous in that sense. We think it's clear. The legislature meant to address what happens when you're married. It meant to address what happens after you're married, if you decide to redo designation. But the legislature did not address what happens where there is no marriage. And where there is no marriage, there is no insured spouse to be designated. Your argument, I take your word. OK. Now, on the divorce decree itself, our position is simply that all you have in the divorce decree is a general assignment of ownership in the insurance policy as part of the party's property settlement agreement. And as recently as 1993, some six years after the enactment of the revocation of undivorced statute, the Texas Supreme Court was still noting in the Little v. Expert Corp. case, courts will not construe a general assignment of ownership of an insurance policy in a property settlement agreement to include an assignment of benefits unless that intent is clear from the agreement. And in the cases that both predated the revocation of undivorced statute and postdated that, what you look at is, is there language that talks about, I won't claim as a beneficiary, I won't take a proceed. Now, you're absolutely right. He could have re-designated after the divorce. There's a 109-day period there between divorce and his untimely death where he could have done a re-designation, which would have fit within the statute. Or he could have changed the beneficiary to be somebody entirely different. He could have changed the beneficiary to be his father. He did not do that. And when you look at the decree here, there's nothing about proceeds. And in fact, when you, and if he had done it, to finish off that point, I meant to make one more point, Holly Moore would have no claim. She didn't own the policy. She didn't have the right to control who the beneficiary would be. There's no question that the divorce decree vested Ian with ownership of the policy to do with whatever he wanted to do. And he had the right to change the beneficiary. He didn't do that. In the cases that look at the language of decrees, you're looking at language frequently that refers to the proceeds. For example, in the Handy case, which we heard referred to by the appellant, the language included a specific reference to the proceeds therefrom. In the Olmstead case, it included a reference to the proceeds therefrom. So what you're looking at is you're looking for a divorce decree that has something more than a simple assignment of ownership of the policy itself. And our position is the decree in this case, and dividing the parties' marital estate, even if you take this as being part of the marital estate, and we think the record was pretty conclusive, it was separate property, it simply has language assigning ownership of the policy. It does not have a reference to her renouncing or giving up her right to take as a beneficiary in the event she was still designated as a beneficiary. Part of the argument that is presented by the appellant in the briefing relies on the release provision in the decree. And the release provision of the decree reads, each party hereby releases and discharges the other party and any entity or property set aside to that party in this decree from every claim, demand, right, and obligation whatsoever, both in law and in equity. That's pretty broad. That either of them ever had or now has against the other or their property upon the reason of any matter, cause, et cetera. Completely missing from that release is that there's no release of future claims. There's no release by Holly within that decree of any claim that might arise in the future, and that would include her claim for the proceeds of the insurance policy as the designated beneficiary at the time of Ian's death. So, the other group of cases which were not addressed earlier in the oral argument are the ERISA cases. And we think that those are different and most particularly the CLIFT case. In the CLIFT case, the Fifth Circuit says for life insurance policies covered by ERISA, our analysis of what happens after divorce with the designation of an ex-spouse as a beneficiary is going to be informed by the Texas statute. The Fifth Circuit graphs a few other things onto it, but it basically says we're going to take the approach of the Texas statute. And in the CLIFT case, using language that is in fact very similar to the decree in this case, they say, yeah, we're going to hold as a matter of federal common law under ERISA that this language is insufficient. So, those cases are not controlling in this case because this case is governed by Texas state law as opposed to federal common law. The analysis in those cases have been somewhat superseded by the Supreme Court's subsequent holdings of really what you need is you need to get a quadro, you need to have a qualified domestic relations order as opposed to fashioning this federal common law. And when you look at the Texas cases applying Texas law as opposed to federal cases applying a federal common law, those Texas cases are constantly searching for something more than the simple assignment of ownership within the policy. They're looking for language in there. And I think that CLIFT says, well, you don't have to have magic words. That's true. But the Texas Supreme Court says you have to have something more than a simple assignment of an ownership interest. And traditionally, the language that they look at is specific reference to proceeds, but which would be is absent here. There's no reference to proceeds here. But what you're looking at is something where it is clearly appears in the words used by the Texas courts from the agreement that in addition to the segregation of the property of the spouses, it was intended to deprive either spouse of the right to take under an insurance contract of the other. And under Texas law, although the failure to exercise his power to change the beneficiary ordinarily indicates he doesn't want to make such a change, each case is decided on its own facts. Now, that last part leads into the discussion that we had in some of the cases in the briefing, which are sort of the death before the ink is dry cases. There's a handful of Texas cases that are addressed where the spouse, one of the divorcing spouses, basically brought to death right after signing the agreement on property division. And in some cases, even in that interim period before the decree has been incorporated into the judgment, although it's still enforceable as a contract under Texas law. So, those cases rest on the idea that under Texas law, the designation of the ex-spouse during the marriage and not changing that beneficiary designation after divorce is a gift of those proceeds. And in those very limited cases where you've got death very close in time, the courts say we will actually look at factual evidence away from the decree itself to see if there's enough to rebut a presumption of a gift. We don't have any evidence like that in this case. And sort of the prototypical case in Texas law for is there enough evidence to rebut the presumption of a gift is the Novotny case where the ex-spouse actually shoots the other spouse. And they say, well, that's probably enough to rebut the presumption of a gift of the policy proceeds. So, I think I've covered now all the points that we meant to cover. I think courts should first deal with the proper construction of the statute and whether it applies to a designation made before marriage ever takes place. We think the answer to that question is that it does not by the language that was used. And then we think the second part is. I just want to make sure I understand your argument. You're saying that because she was designated as a beneficiary before they were married, she was given a gift of the proceeds of the policy? Yeah, yeah, that is what a beneficiary designation. If it was a gift, then it had to be dealt with in the divorce decree because the husband wouldn't have the unilateral right after divorce to take that gift away from her. Is that correct? The language of the case is to talk about the presumption of a gift. I'm just asking what your theory is. Is your theory she was gifted the proceeds pre-marriage and that he can't change that? No, no, no, not at all. That is not our theory of the case at all. No, the case is. I'm arguing what your position is. What are you saying? Was it a gift to her or not? No. Okay, so why would it be a gift? Let me back up and address that in two separate ways. At the time of the designation, it is not a gift. It's his separate property. He's free to do whatever he wants and he can change the designation. Gift is not complete until the fund is there. And then when you look at those Texas cases that talk about what is the idea that you can look at. I want to know your theory, not what the Texas cases say. I want to know what you're claiming in this case. Is this a gift to her or not? I just want to know. This is not a case where you. Our position has been, and it's argued in the brief, that the limited set of Texas cases that look at factual evidence outside of the divorce decree don't apply in this case. Because there was a. Does gift law have anything top, side, or bottom to do with your claim in this case? No, no, we're not. We're not certain of that. I only brought up the gift part because that is the interest of these cases that look at these extrinsic facts, look at for saying in certain instances we don't give effect to the designation after the divorce. That's all I was bringing that up for. No, we're not talking about that. We're looking at just the fact that she was designated, the fact that it occurred during the marriage, the fact that the divorce decree only allocated. I don't want to re-argue that. Did we rely on gift all, top, side, or bottom? No, not at all. That's it. Thank you, Your Honor. May it please the Court. Justice Graves, the case you ask about is called Branch vs. Monumental Life. It's a 2014 Houston Court of Appeals case cited with favor in two federal cases, but you can find that on page 14 of our reply brief at the bottom. It's cited at the bottom and it dispenses with Gillespie, Parton, and Pitts, the cases that counsel's relying on that says that they're conveying ownership. Another case that I mentioned earlier was the Diddick case, Hennig vs. Diddick where they argue that same argument was used that you're only conveying ownership and the Dallas Court of Appeals said we don't agree with that, but even if we would give that argument some credibility, the overall facts reveal and substantiate that you were to get nothing and we can't imagine, I don't know what else you could say in a divorce decree other than you're taking, you're displaced, divested of any and all interest in and into the policy. That's not just ownership. That's any interest period in the policy. It's interesting the divorce decree does address some separate property, so we know that everything else has to be in the community and if you look on, if the divorce decree talks about a mortgage that Ian gets and the house that he gets, they're reconfirming a separate property. The misunderstanding and premise must be that the divorce decrees don't necessarily deal with separate property at all, but they do. They have to. Otherwise, ex-spouses are going to come back and say, well, that wasn't in the decree and therefore it's undivided community property, which I think, and I'm not a family law lawyer, only a victim of it, and I think it's tenants in common is what you get when you have undivided interest in community property. Are you saying it doesn't matter whether we determine that this was separate property or community property? It doesn't matter to the outcome in this case? I'm saying that the marital estate, I believe the court is bound by what the divorcing court said, that this is the marital estate and all life insurance policies ensuring Ian, belong to Ian, and Ms. Moore is divested of any claim in and to those policies. In other words, she gets nothing and it's vice versa. Moore has the same thing. Okay, so back to my question. So you're saying it doesn't matter, we don't have to make a determination about whether it's separate property or community property, or it doesn't matter what determination we make? I believe you're bound by the decree and the decree says the policies are a part of the marital estate, which most people think is community and treat as community. All right, well, you're going to stick to that answer, which I think just passes right by my question. I'm not trying to avoid it. What I'm saying is this. I think the court is bound by the decree. The decree treats . . . How does the decree treat it, separate versus community? I believe that if you read the decree, you probably it's been treated as community property when the marital estate, but it doesn't really matter because it says all policies. And there's a case, it's not in my brief, and I'll be honest with you. I was preparing this called Murph versus Murph. And it's a case where the husband's separate property was thrown in to the community property and he complained about that. But the Texas Supreme Court says you got no complaints because you got all that property. Okay, so there was really no complaints because you got all that property. But here it's the marital estate says all policies. And the only thing carved out, a separate property that they reconfirm, is Ian's mortgage and the house that the mortgage supports. That's the only thing. So if you take that and read the document and you read judgments in Texas like you do contracts. I'm frankly, I do a lot of insurance coverage. You got to read everything. And if you read that, then you come to the conclusion that all policies are a part of the marital estate, i.e. community property. They did that by agreement. And probably they did it because it just really wasn't a lot of stuff. This is not unusual in the family law arena to put all that stuff in there rather than have them take this out, do this, carve this out. It becomes more expensive. You can't go back. And I think counsel is asking you to go back and look at the decree again and redo the decree. And you can't do that. Well, Texas law says you can't do that. We've cited Reese, Treadway, M.C. versus B.C. and a number of other cases, Reese versus Reese. All of these cases says you made the deal. And the only way you can undo the deal is you've got to avoid judgment. No argument about that here. Or you did a direct appeal and there was no appeal. So they're bound by the judgment, which is res judicata. I don't believe there's anything else. Your time has expired and we've got your argument. Thank you, Your Honor. I appreciate your time.